CASE 89—ACTION ON NOTE. COUNTER-CLAIM FOR RESCIS-
SION—JUNE 1.

## Worland v. Secrest.

APPEAL FROM NICHOLAS CIRCUIT COURT.

RESCISSION—BREACH OF WARRANTY.—A written contract is presumed
to embrace the entire agreement between the parties and in the
absence of proof of fraud committed by one of the parties be-
fore or at the time of the execution of the contract, the other
party is not entitled to (1) a rescission on that ground, or (2) to
damages for breach of warranty.

W. H. HOLT FOR APPELLANT. (W. R. ROSS AND SON OF COUNSEL.)

1. The action should not have been transferred to equity. Kerr on
Fraud and Mistake (Bump's ed.), p. 328.
2. No fraud was proved.

KENNEDY & WILLIAMSON FOR APPELLEE.

1. The defendant was entitled under the facts and circumstances of
this case to have it transferred to the equity side of the docket.
Brooks v. Carneal's Admr., Litt. Selec. Cases, 164; Cummins v.
Latham, T. B. M., vol. 4, p. 103; 9 Am. & Eng. Ency. of Law,
676, 677; 8 Am. & Eng. Ency. of Law (1st ed.), 651; Prewitt
v. Trimble, 92 Ky., 176.
2. The defendant offered to rescind the contract in a reasonable
time after discovering fraud. Gately v. Newell, 9 Ind., 572;
Neblett v. MacFarland, 92 U. S., 105.
3. The testimony in this case shows conclusively that a gross fraud
was practiced upon the appellee by the vendor in the sale of the
patent purchased.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

R. H. & C. G. Moreman owned a patent cistern cleaner
and water purifier which cleaned cisterns without taking
the water out, and purified the water by means of a cylin-
der filled with air, let down to the bottom of the cistern,
the pressure of the water when a valve was opened in the
bottom of the cylinder scouring the bottom of the cistern,
and forcing the mud up into the cylinder as the air escaped.

R. H. Moreman, going about using his cleaner and selling the right, stopped with appellee, George R. Secrest, a hotel keeper at Carlisle, Kentucky, and while there had several talks with him about the value of his patent, and what the cleaner would do. Secrest proposed to buy the right for the State of Illinois, and after Moreman left Carlisle, for Richmond, Kentucky, Secrest went to Richmond, and there they made the following written contract:

"Article of agreement between R. H. & C. G. Moreman, of the county of Meade and State of Kentucky, party of the first part, and George R. Secrest, of the county of Nicholas and State of Kentucky, of the second part, witnesseth that, for and in consideration of the sum of one dollar cash in hand paid, the receipt whereof is hereby acknowledged, and for the further consideration of five hundred dollars (less 20 per cent.), do hereby agree to convey to the party of the second part their right, title, and interest in and to the State of Illinois in their patent cistern cleaner and water purifier, known as 'Moreman's Cistern Cleaner.'

"The party of the second part hereby agrees to pay to the party of the first part the five hundred dollars aforementioned (less 20 per cent.), when said party of the first part shall have made to said second party a deed of patent in full.

"The party of the first part further agrees to grant to the party of the second part an option on the States of Indiana, Ohio, and Iowa for a period of eight months from this date, and it is further agreed between said parties that the party of the second part may sell to whom he pleases the aforementioned States, receiving from the said first party 20 per cent. on all sales made of said territory, but that the sale of no State shall be under five hundred dol-

lars. Witness our hands, this 25th day of September, 1894. R. H. & C. G. Moreman, by R. H. Moreman. George R. Secrest. Witness: J. S. Kennedy."

It appears from the evidence that Moreman used the machine very successfully, cleaning out quite a number of cisterns, and created considerable interest in his invention at Carlisle and in the vicinity. It also appears that he sold county rights to other parties, and they did some work which was then thought very successful. On January 17th, following, Moreman duly conveyed by deed the patent right for the State of Illinois to Secrest, who paid him $150 cash, and executed to him his note for $250, due in four months. The deed and note are in the usual form. Secrest failed to pay the note at maturity, and when sued upon it by appellant, to whom it had been assigned, alleged that as an inducement for him to make the purchase of the patent right Moreman represented to him that he was the inventor of a new and useful invention for cleaning wells and cisterns, which would clean all wells and cisterns perfectly and purify the water; that there was no other patent in existence covering the same ground that his invention covered, or that would do what his invention would do; that he relied upon these representations, and was induced by them to make the trade; but he alleged that they were all false and fraudulent, and were known by Moreman to be false and fraudulent at the time, and that they were made for the fraudulent purpose of inducing him to make the purchase. He also alleged that there was another patent covering substantially the same ground, which was better than Moreman's, and that his patent was worthless. He prayed a cancellation of the deed and note, and judgment for the amount that he had paid.

Issue being joined, and the case transferred to equity, the court below on final hearing dismissed both the petition and counter-claim. This was, in effect, a finding by the court below that there was no fraud in the transaction; for, if the charges of fraud had been deemed maintained, the deed should have been canceled, and the consideration paid should have been restored to appellee. The evidence very clearly sustains this conclusion. It shows that there is another patent, somewhat similar to Moreman's, which cleans the cistern very well, but does not aerate or purify the water, as it is claimed Moreman's invention does. So this patent does not cover the same ground as Moreman's. It had only been obtained a short time before, and its existence was unknown to him. The proof as to Moreman's representations of what his cleaner would do does not show that he said anything more than he was justified in believing from his experience. The testimony is persuasive that appellee's purchase was induced more by what the cleaner did and the interest created in the community than by Moreman's statements. We think it, therefore, clear that the transaction can not be set aside for fraud.

The court below evidently reached this conclusion; but the evidence showing that the other patent did better work than Moreman's, and that his was not valuable, the chancellor was of opinion that Moreman's representations, which, under the rule in this State, are regarded as warranties, had not been made good, and so the patent right was worth much less than was supposed. He therefore made an abatement of the price as for a breach of warranty in the sale. The question therefore arises, admitting that the evidence would sustain the conclusion of the chancellor, can the court allow an abatement of the price for a

breach of verbal representations made at the time of the sale, where the parties have put their contract in writing, and there is no fraud in the transaction?

It is a well-settled rule that where parties have deliberately put their contract in writing it is conclusively presumed that their whole engagement was reduced to writing, unless from the form of the instrument this does not appear to have been the intention of the parties. Parol evidence of previous or contemporaneous negotiation will not be admitted to vary the terms of the written agreement, in the absence of fraud or mistake, for the previous, verbal negotiations are merged in the writing. The written contract in this case, above quoted, and the formal deed which was afterwards made, must be presumed to have been intended by the parties to embrace the contract between them, and, as neither of these contains a warranty, none can be implied, and proof of verbal representations previously made not amounting to fraud can not be received.

In a note to Hobart v. Young, 12 Lawy. Rep. Ann. 694 (s. c. 21 Atl. 612), the learned editor says, citing many authorities:

"If the article is sold by a formal written contract, or a regular bill of sale, and that is silent on the subject of warranty, no oral warranty made at the same time, or previously even, can be shown, since the writing is supposed to embody the whole contract. For the same reason no additional oral warranty can be ingrafted on or added to one that is written."

This rule has received the indorsement of the Supreme Court of the United States in De Witt v. Berry, 134 U. S., 306 [10 Sup. Ct., 536], and Seitz v. Brewers' Refrigerating Machine Co., 141 U. S., 510 [12 Sup. Ct., 46]; the lat-

ter case being not unlike this.    In Reed v. Van Ostrand, 1 Wend. 424 [19 Am. Dec., 529], the facts were substantially the same as in this case, and it was held that the purchaser was without remedy.   See, also, 28 Am. & Eng. Enc. Law, 794, and cases cited.

There was no plea of mistake in the written contract, and, as the charge of fraud was not sustained by the proof, the court was not warranted in allowing an abatement of the price, because the patent right was less valuable than supposed by the parties when the trade was made.    The judgment is therefore reversed, and cause remanded for judgment for plaintiff for the amount of the note.